# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| CRISTINA R. STOVER, | : | Case No. 3:17-cv-00398 |
| Plaintiff, | : | Magistrate Judge Sharon L. Ovington |
| | : | (by full consent of the parties) |
| vs. | : | |
| COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION, | : | |
| Defendant. | : | |

# DECISION AND ENTRY

## I.

The Social Security Administration provides Disability Insurance Benefits and Supplemental Security Income to individuals who are under a disability, among other eligibility requirements. A disability in this context refers to "any medically determinable physical or mental impairment" that precludes an applicant from engaging in "substantial gainful activity." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); *see Bowen v. City of New York*, 476 U.S. 467, 469-70 (1986).

On March 27, 2014, Plaintiff Cristina R. Stove protectively filed applications for Supplemental Security Income and Disability Insurance Benefits. She asserted an amended disability onset date of March 26, 2003.

Plaintiff's applications and evidence worked their way through preliminary reviews and eventually landed in front of Administrative Law Judge (ALJ) Eric Anschuetz. After a

hearing, during which Plaintiff and a vocational expert testified, ALJ Anschuetz denied Plaintiff's applications on the ground that she was not disabled. (Doc. #4, *PageID* #s 49-70).

Plaintiff brings the present case contending that ALJ Anschuetz failed to properly evaluate the opinions provided by her treating psychiatrist Jack Lunderman, Jr., M.D. Plaintiff does not challenge the ALJ's findings regarding her physical impairments. *See* Doc. #6, *PageID* #2398.

Plaintiff seeks a finding that she is disabled (leading to a remand for payment of benefits) or a remand for further proceedings. The Commissioner finds no error in the ALJ's decision and asks the Court to affirm rather than remand.

## II.

Plaintiff was forty-six-years old on the date of the ALJ's decision. She has a high-school education plus about two years of college. (Doc. #4, *PageID* #68). She worked in the past as a truck dispatcher and a general office clerk.

Plaintiff testified during an administrative hearing that she has suffered from depression, generalized anxiety disorder, agoraphobia, and fibromyalgia for many years. She told that ALJ about the stress-induced seizures she has every one-to-two weeks. When the ALJ asked her what causes her stress, she explained:

> Just life, everyday life. I am overwhelmed. I'm sad. I feel like there's no hope. I don't want to be here. If I have an option and my choice I wouldn't be here right now. I just want to die. My life, I have no quality of life. I just wish I could go to sleep and not wake up because my little boys, 17 and ten years old have to take care of their mom…, when I should be taking care of them. And it's just not fair to them. It's not fair to me. It's not fair to them.

*Id*. at 344. Plaintiff's testified that her depression affects everything she does. She added, "It affects my sleep. It affects my hygiene. It affects my lack of not wanting to do anything. I have no motivation. Like I said, if it was up to me I would just end it right now. I'm hopeless." *Id*. at 364.

Plaintiff also described herself as a "very, very nervous person…," and anxiety is "through the roof." *Id*. at 365. She said, "It's just honestly I feel just stupid. I feel like everybody's looking at me and talking about me…." *Id*. Plaintiff also reported extreme memory loss—"some things I can remember like it was yesterday, and other things I can't remember to save my life." *Id*. And she said she has trouble concentrating "[a]ll the time." *Id*. at 366.

Psychiatrist Dr. Lunderman first examined Plaintiff in May 2014. *Id*. at 1177-78. He diagnosed Plaintiff with post-traumatic stress disorder due to childhood trauma, major depressive disorder, and he thought it necessary to rule out obsessive-compulsive disorder. *Id*. at 1178. He noted that Plaintiff's treatment plan would be to adjust her medications "to improve mood & decrease anxiety." *Id*.

In July 2014, Dr. Lunderman diagnosed Plaintiff with post-traumatic stress disorder (due to history of sexual abuse), major depressive disorder, and R/O (rule out) bipolar disorder. *Id*. at 1208. He reported that Plaintiff had marked mood instability and was anhedonic, irritable, and angry. She had intermittent and unpredictable suicidal ideation, marked depression with low energy and "'hysterical energy spells,'" and a history of flashbacks to childhood sexual abuse. *Id*. at 1207. Dr. Lunderman further disclosed that Plaintiff had anxiety with shortness of breath and heart palpitations, sweating, and "'can't

3

move or function.'" *Id*. According to Dr. Lunderman, Plaintiff suffers from low-stress tolerance and limited coping skills—she becomes confused and disoriented, and she decompensates with stress. She also has a diminished ability to concentrate. Plaintiff informed Dr. Lunderman that she has racing thoughts; her "mind never shuts off." *Id*. Dr. Lunderman opined that her ability to persist was poor, and she would have "difficulty completing tasks in a timely manner if at all." *Id*. Dr. Lunderman's prognosis for Plaintiff was guarded. He did not anticipate her "being able to be productive in any workplace setting for 24-plus months, if ever." *Id*. at 1208.

In November 2014, Dr. Lunderman completed a questionnaire. He identified Plaintiff's signs and symptoms to include poor memory, appetite disturbance with weight gain, sleep disturbance, mood instability, emotional lability (anger and crying spells), anhedonia or pervasive loss of interests, paranoia or inappropriate suspiciousness, feelings of guilt/worthlessness, difficulty thinking or concentrating, suicidal ideation, social withdrawal or isolation, decreased energy, intrusive recollections of a traumatic experience with flashbacks, persistent irrational fears, generalized persistent anxiety, and pathological dependence or passivity (pseudo seizures). *Id*. at 1260. Dr. Lunderman opined that when performing unskilled work, Plaintiff was markedly limited in her ability to remember work-like procedures; to understand and remember very short and simple instructions; to carry out very short and simple instructions, to maintain attention for two-hour segments; to maintain regular work attendance and be punctual within customary tolerances; to perform at a consistent pace without an unreasonable number and length of rest periods; and to accept instructions and respond appropriately to criticism from supervisors. *Id*. at 1262. Dr.

4

Lunderman anticipated that Plaintiff's impairments or treatment would cause her to be absent from work more than three times a month. *Id.* And Dr. Lunderman thought that Plaintiff's impairments caused her to have marked restrictions in her daily activities of living; marked difficulties in maintaining social functioning; frequent deficiencies in concentration, persistence or pace resulting in a failure to complete tasks in a timely manner; and repeated episodes of deterioration or decompensation in work or work-like settings. *Id.* at 1263.

Dr. Lunderman noted that Plaintiff's treatment involved medication management and brief supportive therapy. *Id.* at 1359. Her response to therapy was "marginal," and Dr. Lunderman anticipated adjusting her medications to address her symptoms. *Id.* at 1359.

### III.

Review of ALJ Anschuetz's decision considers whether he applied the correct legal standards and whether substantial evidence supports his findings. *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007). "Substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (citation omitted).

The ALJ reviewed the evidence and evaluated Plaintiff's disability assertion under each of the five sequential steps set forth in Social Security Regulations. *See* 20 C.F.R. §§

404.1520, 416.920.[1]  His more pertinent findings began at steps two and three where he found that Plaintiff had severe impairments—"(symptoms attributed to) fibromyalgia, minor motor seizures (of uncertain etiology), (unspecified) circulation disorder, affective (depressive) disorder, anxiety (post-traumatic stress) disorder—and that her impairments did not automatically qualify her for benefits. (Doc. #4, *PageID* #s 54-63).

At step four, the ALJ concluded that the most Plaintiff could do (her residual functional capacity, *see Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002)), consists of "light work" with many limitations.  She found, for example:

> The claimant can stand/walk up to six hours during any given eight-hour workday.  She can sit up to six hours during any given eight-hour workday….  [She] should avoid workplace hazards such as unprotected heights and unshielded rotating machinery.  She is limited to performing simple, routine, repetitive tasks but not at a production rate.  [She] can have occasional interaction supervisors, co-workers, and the public.

*Id.* at 63.

The ALJ concluded at step five that there were approximately 350,000 jobs that exist in the national economy that Plaintiff could perform.  *Id.* at 69.  These main findings led the ALJ to ultimately conclude that Plaintiff was not under a disability and not eligible to receive Disability Insurance Benefits or Supplemental Security Income.

## IV.

Social Security Regulations require ALJs to adhere to certain standards when weighing medical opinions.  "Key among these is that greater deference is generally given

---

[1] Further citations to social security regulations will identify the pertinent Disability Insurance Benefits regulation with full knowledge of the corresponding Supplemental Security Income regulation.

to the opinions of treating physicians than to those of non-treating physicians, commonly known as the treating physician rule." *Rogers,* 486 F.3d at 242 (citations omitted). The rule is straightforward:

> Treating-source opinions must be given "controlling weight" if two conditions are met: (1) the opinion "is well-supported by medically acceptable clinical and laboratory diagnostic techniques"; and (2) the opinion "is not inconsistent with the other substantial evidence in [the] case record."

*Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013) (quoting in part 20 C.F.R. § 404.1527(c)(2)); *see Gentry*, 741 F.3d at 723.

If the treating physician's opinion is not controlling, "the ALJ, in determining how much weight is appropriate, must consider a host of factors, including the length, frequency, nature, and extent of the treatment relationship; the supportability and consistency of the physician's conclusions; the specialization of the physician; and any other relevant factors." *Rogers*, 486 F.3d at 242 (citing *Wilson*, 378 F.3d at 544).

The Regulations also require ALJs to provide "good reasons" for the weight placed upon a treating source's opinions. *Wilson*, 378 F.3d at 544. This mandatory "good reasons" requirement is satisfied when the ALJ provides "specific reasons for the weight placed on a treating source's medical opinions." *Id.* (quoting Soc. Sec. R. 96-2p, 1996 WL 374188, at *5 (Soc. Sec. Admin. July 2, 1996)). The goal is to make clear to any subsequent reviewer the weight given and the reasons for that weight. *Id.* Substantial evidence must support the reasons provided by the ALJ. *Id.*

The ALJ placed no weight on Dr. Lunderman's opinions. Doing so, the ALJ considered Dr. Lunderman's specific statements regarding Plaintiff's mental limitations.

7

The ALJ acknowledged that Plaintiff may have "low stress tolerance," "limited coping skills," and a "diminished ability to concentrate or focus," but explained that there was no independent evidence to document "marked" limitations as indicated by Dr. Lunderman. *See* Doc .#5, *PageID* #60. This was a proper consideration under the Regulations. *See* 20 C.F.R. § 404.1527(c)(4) ("Generally, the more consistent a medical opinion is with the record as a whole, the more weight we will give to that medical opinion.").

The ALJ found that Dr. Lunderman's own treatment record was inconsistent with his opinion. *See* Doc. #4, *PageID* #60. Indeed, the record shows that at times Plaintiff's condition improved. As the ALJ explained, Plaintiff displayed stable affect, stable mood, no signs of anxiety, normal concentration, and appropriate appearance on multiple occasions. Substantial evidence supports this reason for discounting Dr. Lunderman's opinions. *See id*. at 1858, 1861, 1888.

Plaintiff argues that the administrative records contains substantial evidence supporting Dr. Lunderman's opinions and that the ALJ erred by failing to follow the treating-physician rule given where substantial evidence supported his opinions. This improperly diverts the substantial-evidence standard to Dr. Lunderman's opinions rather than where it belongs, on the ALJ's decision. The Regulations do not require ALJs to place controlling or deferential weight on a treating physician's opinions when substantial evidence confirms such opinions. Instead, as explored above, the treating-physician rule is applicable when "it is well-supported by medically acceptable clinical and laboratory diagnostic techniques," and "is not inconsistent with the other substantial evidence in [the] case record." *Gayheart*, 710 F.3d at 376. If the evidence does not fit these criteria, ALJs

8

consider the remaining regulatory factors (supportability, consistency, specialization, etc.). *Id*. There is no suggestion in this Regulation—let alone a mandatory rule—that requires an ALJ to automatically credit a treating physician's opinion when substantial evidence supports it.

Additionally, if the substantial-evidence standard mandated ALJs to automatically credit a treating physician's opinion when substantial evidence supports it, no actual weighing of the opinion would occur and there would be no "zone of choice" within which ALJs may weigh under the applicable legal criteria. *Cf. Lindsley v. Comm'r of Soc. Sec.*, 560 F.3d 601, 604-05 (6th Cir. 2009) ("The substantial evidence standard presupposes that there is a 'zone of choice' within which the Secretary may proceed without interference from the courts." (citation omitted)

In other words, if Plaintiff's argument is accepted, ALJs would be required to search the record for substantial evidence that supports the treating physician's opinion. If such evidence exists, no further evaluation would be needed, the legal criteria imposed by 20 C.F.R. § 404.1527(c) would be superfluous, and the ALJ would have no choice but to fully credit the treating source's opinion. ALJs, however, must perform a much more thoughtful weighing of a treating physician's opinions. *See id.*; *see also Gayheart*, 710 F.3d at 376.

Plaintiff also appears to object to the ALJ's reliance on opinions from state agency doctors, who found that she had moderate limitations on her ability to perform her daily activities, maintain social functioning, and maintain concentration, persistence, or pace. *See* Doc. #6, *PageID* #2399 (citing *PageID* #s 58-61). But "the ALJ's decision to accord

9

greater weight to state agency physicians over [Plaintiff]'s treating sources was not, by itself, reversible error." *Blakely v. Comm'r of Soc. Sec.*, 581 F. 3d 399, 409 (6th Cir. 2009). Perhaps more significantly, the ALJ did not simply reject Dr. Lunderman's opinions in favor of the state-agency doctors or apply more scrutiny to Dr. Lunderman's opinions. The ALJ provided a detailed explanation for why he did not credit Dr. Lunderman's opinions, and reasonably found that the opinions from the state agency doctors were consistent with and supported by the evidence.

Accordingly, for the above reasons, Plaintiff's Statement of Errors lacks merit.

**IT IS THEREFORE ORDERED THAT**:

1. The Commissioner's non-disability decision on August 18, 2016 is affirmed, and

2. The case is terminated on the Court's docket.

September 30, 2019            *s/Sharon L. Ovington*
                                                   Sharon L. Ovington
                                                   United States Magistrate Judge